IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UTICA FIRST INS. CO.  :  CIVIL ACTION
         :
   v.     :
         :
EDWARD MACLEAN    :  NO. 08-1138

MEMORANDUM

Dalzell, J.          February 19, 2009

On March 28, 2005, Edward Maclean shot Brian Scott Orr dead "because he believed it was necessary for self-defense." Joint Stip. of Facts at ¶¶ 12-13. Sanford D. Beecher, Administrator of Orr's estate,[1] is suing defendant Edward Maclean in the Court of Common Pleas of Pike County ("Beecher Complaint" or "Beecher Case") under the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301, and Survival Act, 42 Pa. C.S.A. § 8302. Utica First Insurance Company ("Utica") issued a homeowner's insurance policy to Maclean and has been defending him in the Beecher Case under a reservation of rights.

In the complaint Utica filed in our Court, it seeks a declaratory judgment that Maclean's killing of Brian Orr ("Brian" or "Orr") was intentional and therefore excluded from its policy, which provides liability coverage only for accidents. Utica

---

[1] Beecher and Orr's Estate are not parties to this action in our Court.

requests declarations that the policy does not bind Utica to defend Maclean in the Beecher Case, or indemnify him for any damages, particularly punitive or exemplary damages and related defense costs.

Utica filed a motion for summary judgment, Maclean filed a response, and Utica replied. Utica has established through uncontested facts that Maclean intentionally shot Orr, and Maclean has not identified remaining genuine issues of fact. We will therefore grant Utica's motion and enter judgment in its favor.

I.    **Factual Background[2]**

The parties filed a Joint Stipulation of Facts, and much of our recitation of the facts below relies on that document. All other facts below are those in the record that Maclean does not contest[3] or Maclean's own account of the night that Orr died.

---

[2] We note at the outset that on July 16, 2008, we held a conference with the parties pursuant to Rule 16 of the Federal Rules of Civil Procedure. At that conference, both parties told us that they did not need any discovery, and Maclean's counsel agreed that the case presented legal -- not factual -- issues.

[3] Maclean does not contest any of the facts in the exhibits Utica attached to its motion.

A.    **The Insurance Policy**

Utica issued Maclean a Special Homeowners Policy (No. HOP 125689202), which was in effect from September 12, 2004 to September 12, 2005. Joint Stip. at ¶ 1. The policy states, "[w]e pay, up to our limit, all sums for which an insured is liable by law because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage." Ex. E[4] at 8, Coverage L (emphasis in original removed in all quotes from the policy); Joint Stip. at ¶ 2. The policy defines <u>occurrence</u> as "an accident." Ex. E at 2; Joint Stip. at ¶ 3. The "policy does not apply to bodily injury or property damage which results directly or indirectly from . . . an intentional act of an insured or an act done at the direction of an insured." Ex. E at 10-11; Joint Stip. at ¶ 4. It also "does not cover punitive or exemplary damages or related defense costs." Ex. E at "Punitive Damages Exclusion" (unnumbered page); Joint Stip. at ¶ 5.

_____

[4] All exhibits were attached to Utica's motion for summary judgment.  Defendant submitted no exhibits with his response.

**B.** **Maclean's Involvement with Orr's Death**

Except in one important respect, which we will discuss below, the facts in the record before us do not present a perfectly coherent story of the events that led to Orr's death. In his answer to the state court complaint, Maclean explained that Brian Orr and Orr's wife, Laura,[5] came to the defendant's house on the night of March 28, 2005. Ex. D at ¶ 3. Brian and Laura got into a lengthy and violent fight,[6] and Brian eventually left Maclean's house "after physically beating" her. Id. at ¶ 4. Orr returned to Maclean's house with a loaded gun, accused Maclean of having an affair with Laura, and threatened to kill defendant. Id. Maclean does not know what happened next, but somehow Orr's "gun was placed on the table."[7]  Id. at ¶ 5.

---

[5] The documents before us refer to Brian Orr's wife Laura as "Laura Lorenzo" and "Laura Orr." We will refer to her as "Laura."

[6] The source of the disagreement between Brian and Laura is not clear. Laura told police that they were arguing because Brian accused Maclean of having an affair with Laura. Ex. B at 1. But in his answer, Maclean reported that Laura started the fight by "demand[ing] that Brian evict his teenage son . . . from their household." Ex. D at ¶ 3. We need not resolve this conflict to decide Utica's motion for summary judgment because it is not material to the intentionality of Maclean's shooting of Orr.

[7] In an interview shortly after the shooting, Maclean
(continued...)

4

Maclean unloaded the gun, and then Orr punched him and "knocked him out." Id.

After Maclean regained consciousness, Orr tried to choke him and then walked toward the living room, where Maclean had a gun cabinet. Id. at ¶ 6-7. At this point, Maclean "went into his bedroom and retrieved his own handgun, fearing for his safety and his very life." Id. at ¶ 7. Maclean came into the living room, and "Orr once again came at [Maclean], appearing to try and grab for [his] gun. [Maclean] fired the gun in self-defense, hoping that Brian Orr could be stopped from his constant aggression and life threatening actions." Id. at ¶ 8. See also Joint Stip. at ¶¶ 12-13 (Maclean "went to his bedroom to get a loaded handgun, returned, and then fired the handgun" at Brian. He "fired the gun because he believed it was necessary for self-defense."). Maclean admitted to the police that he shot Orr "to stop [him]." Ex. B at 2. Regarding the shooting itself, then, the facts consistently show that Maclean acted intentionally for the purpose of self

---

[7] (...continued)
told police that Orr threw his gun. According to the police report, Maclean said that he then got the gun, unloaded it, and put it in his waistband. Ex. B (Aff. Prob. Cause to Search Maclean's home) at 2.

defense. There is no evidence that the shooting was accidental or negligent.

On September 6, 2006, Maclean pled <u>nolo contendere</u> to the involuntary manslaughter of Orr, for which he received a sentence of eleven and a half to twenty-three months of imprisonment. Joint Stip. at ¶¶ 15-16. At the sentencing hearing on November 30, 2006, Maclean's attorney told the court that the defendant "'thought for a while, thought for a minute, he went to his bedroom, he got a revolver that he had. He was concerned because there was a gun rack in the living room with rifles in it. He went out, [Decedent] was by the door, he turned and came at [Defendant] again and [Defendant] shot him.'" <u>Id.</u> at ¶ 17 (all punctuation and alterations in the original). Maclean himself told the judge, "I'm sorry the man had died, but he came to my house with a gun that would have killed me. He had no intentions of leaving my home until the job was done and my life was in danger." Ex. C at 17.

### C.   <u>The Beecher Complaint</u>

On October 2, 2007, Sanford Beecher, Administrator of Orr's estate, filed a complaint against Maclean in the Court of Common Pleas of Pike County, in which Beecher set forth causes of action

for wrongful death and survival. Joint Stip. at ¶¶ 6-7. The Beecher Complaint alleges that on March 28, 2005, Orr, Laura, and Maclean went to Maclean's "real property . . . after an evening of drinking alcoholic beverages." Ex. A at ¶ 3. At some point, the Beecher Complaint alleges, Orr and Laura began arguing. Id. at ¶ 3. Orr allegedly left Maclean's house and came back with a pistol, which Orr pointed at Maclean. Id. at ¶ 4. According to the Beecher Complaint, Orr "gave up possession of the pistol [and] it was unloaded by [Maclean]." Id. at ¶ 5. Then Beecher claims that "[a] fight between [Orr and Laura] resumed," and "[Maclean] went to his bedroom [and] returned shortly thereafter with a loaded pistol of his own removed from his night stand." Id. at ¶¶ 7-8. Up to this point, the facts Beecher alleged in his complaint are roughly in accord with those to which the parties stipulated in this case. In stark contrast to the joint stipulation we have before us, Beecher alleges that Maclean "negligently permitted the weapon to fire" at Orr and caused an injury that resulted in Orr's death. Id. at ¶¶ 8-9.

## II.  **Analysis**[8]

---

[8] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In

(continued...)

In its motion for summary judgment, Utica argues that the claims in the Beecher Complaint are excluded from the insurance policy it issued to Maclean because the defendant acted intentionally in shooting Orr. This intentional act, according to Utica, renders the shooting something other than an "occurrence" or an "accident." Utica avers that Beecher's characterization of

---

[8] (...continued)
ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Liberty Lobby, 477 U.S. at 255.

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982). It is not enough to discredit the moving party's evidence, the non-moving party is required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257 (emphasis in original). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. See Liberty Lobby, 477 U.S. at 249-50. Also, If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Maclean's actions as negligent is "merely artful pleading." Pl.

Mot. at ¶ 63. Utica asserts, furthermore, that public policy in

Pennsylvania prohibits insurance companies from indemnifying

their insureds for intentional torts and criminal acts. Utica

also claims that it should not be liable for indemnifying Maclean

for any punitive and exemplary damages and related defense costs

because the policy specifically excludes coverage for those types

of damages.

In his two-page response, Maclean appears to argue that

Utica has not carried its burden of establishing that there is no

genuine issue of material fact. Maclean states that "[n]o

discovery has taken place, and no witnesses to the subject

incident, including Mr. Maclean himself, have been deposed."[9]

Resp. at 2. Maclean also contends that Utica may not rely upon

his plea of <u>nolo contendere</u> as an admission. Maclean claims that

whether he acted negligently or intentionally is a genuine issue

of material fact, which makes summary judgment inappropriate.

---

[9] It bears repeating that Maclean's counsel represented
to the Court that he needed <u>no</u> discovery in this case and that
the only issues were questions of law. At no time has the
defendant requested leave to conduct discovery or sought any
extensions of deadlines to accommodate discovery. Any blame for
the lack of discovery thus falls squarely on Maclean's shoulders.

9

But Maclean does not "set forth specific facts showing that there is a genuine issue for trial," as Rule 56 obliges him to do in order to defeat Utica's motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Maclean acknowledges that he "'must go beyond [his] pleadings [sic] and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial.'" Def. Memo. at 1 (quoting In re. Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002)). Yet Maclean fails to point to any facts that show there is a genuine issue of material fact. Maclean baldly states, rather, that we should deny plaintiff's motion because "[w]hether Defendant's acting in self-defense constituted an intentional act, versus a negligent act, remains to be determined, and is a genuine issue of material fact." Def. Memo. at 2. Finally, Maclean mistakenly argues that Utica's duty to defend him in the Beecher Case "is a genuine issue of material fact." Resp. at 2. Of course, whether Utica has a duty to defend Maclean is a question of law. See Creed v. Allstate Ins. Co., 529 A.2d 10, 12 (Pa. Super. 1987).

Whether the damages that Orr's estate seeks in the Beecher Case are within the coverage of Utica's policy is also a legal question and thus appropriate for disposition on summary

judgment. Id. at 12. As noted, the record before us presents a somewhat confused picture of the events at Maclean's home on March 28, 2005. But to dispose of this motion, we need not determine exactly what happened during the entire course of events (e.g., why Brian and Laura were fighting or how Orr was divested of his gun). The parties have agreed to the only facts necessary to answer the narrow questions before us: whether the insurance policy Utica issued to Maclean binds the insurer to defend or indemnify Maclean in the Beecher Case, especially for any punitive or exemplary damages for which Maclean may be found liable.

We will first discuss Utica's duty to defend Maclean and then turn to the issue of indemnification. Utica's duty to defend is broader than its duty to indemnify, so if we conclude that Utica has no duty to defend, it will have no duty to indemnify. See Pacific Indemnity Co. v. Linn, 766 F.2d 754, 766 (3d Cir. 1985).

Based on the uncontested facts in the record, including Maclean's own admissions, we conclude that Maclean acted intentionally and that the shooting was not an "accident" under Pennsylvania law. We will therefore grant Utica's motion for summary judgment.

11

A.   **Utica's Duty to Defend**

In determining whether Utica has a duty to defend Maclean in the Beecher Case, we compare the insurer's obligations under the policy with the allegations in the Beecher Complaint. Gene's Restaurant, Inc. v. Nationwide Ins. Co., 548 A.2d 246, 246-47 (Pa. 1988). Under Pennsylvania law[10], "an insurer's duty to defend an action brought against its insured is to be determined solely by the allegations contained in the plaintiff's pleadings." Nationwide Mutual Fire Ins. Co. v. Pipher, 140 F.3d 222, 225 (3d Cir. 1998). There are two steps to this analysis: first, to "interpret the insurance policy to determine the scope of coverage"; and second, to "analyze the complaint filed against the insured to determine whether the claims asserted potentially fall[] within that coverage." Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. 1992). Utica has the burden of showing that the claims raised in the Beecher Complaint are excluded from the policy it issued to Maclean. Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F.Supp.2d 488, 511 (E.D. Pa. 2006). The cause of action plaintiff pleads does not, however, determine an insurer's duty to defend; rather, the issue

---

[10] It is undisputed that Pennsylvania law governs this controversy.

is whether the factual allegations in a complaint describe activity that falls within the contours of the policy's coverage. Mutual Benefit Ins. Co. v. Haver, 725 A.2d 743, 745-46 (Pa. 1999). For example, if a policy covers accidents and a plaintiff asserts only claims for intentional torts, the insurance company has no obligation to defend its insured in the underlying case. See Gene's Restaurant, 548 A.2d at 247.

Requiring an insurance company to defend or indemnify its insured for intentional torts or criminal acts would also violate public policy in Pennsylvania. Melrose Hotel, 432 F.Supp.2d at 507; Germantown Ins. Co. v. Martin, 595 A.2d 1172, 1175 (Pa. Super. 1991). See also McAllister v. Millville Mutual Ins. Co., 640 A.2d 1283, 1285 (Pa. Super. 1994) ("Principles of public policy and common law prohibit one from profiting from his own wrong, particularly his own crime."). The Superior Court of Pennsylvania came to this conclusion "based on the common law adage that a person should not profit from his wrongful acts." United Svcs. Auto. Assoc. v. Elitzky, 517 A.2d 982, 986 (Pa. Super. 1986).

The insurer must, however, defend its insured if the facts in the complaint "state[] a claim to which the policy potentially applies." D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa.

13

Super. 1986) (emphasis in original). <u>See also</u> <u>Pipher</u>, 140 F.3d at
225. This is true even if the facts "are completely groundless,
false or fraudulent." <u>D'Auria</u>, 507 A.2d at 859, <u>quoted in, e.g.,</u>
<u>Humphreys v. Niagara Fire Ins. Co.</u>, 590 A.2d 1267, 1271 (Pa.
Super. 1991). Therefore, if the facts alleged in the Beecher
Complaint, read broadly, state a claim that Utica's policy could
cover, Utica has a duty to defend Maclean.

### 1.   **Policy Coverage**

The interpretation of insurance contract terms is a legal
issue. <u>Travelers Indem. Co. v. Fantozzi</u>, 825 F.Supp. 80, 84 (E.D.
Pa. 1993). Under Pennsylvania law, we give unambiguous policy
terms their "plain and ordinary meaning," but we construe any
ambiguous terms against the insurer. <u>Id.</u> (internal quotations
omitted). <u>See also</u> <u>Frog, Switch, & Mfr. Co. v. Travelers Ins.</u>
<u>Co.</u>, 193 F.2d 742, 746 (3d Cir. 1999).

Utica's policy covered Maclean's liability for "bodily
injury . . . caused by an occurrence" and provides that it "will
defend a suit seeking damages if the suit resulted from bodily
injury or property damage not excluded under this coverage." Ex.
E at 8. The policy defines <u>occurrence</u> as "an accident," and it
excludes liability coverage for "the intentional act of an

insured or an act done at the direction of an insured." Id. at 2,
11. Pennsylvania courts interpreting similar language in
insurance contracts have concluded that an intentional act is not
an accident and, therefore, not an "occurrence" as defined in
these kinds of policies. Gene's Restaurant, 548 A.2d at 247.

### 2. Beecher Complaint and Utica's Duty to Defend

In the Beecher Complaint, Beecher alleged that Maclean
"negligently permitted the weapon to fire" at Orr. Ex. A at ¶ 8.
Neither party claims that Beecher failed to allege the elements
of negligence or that the policy does not cover negligent acts.
Rather, a negligent act clearly falls within the realm of an
"accident," so the Beecher Complaint triggers Utica's duty to
defend Maclean in the Beecher Case. But our analysis does not end
here.

Beecher may not compel the ongoing involvement of Maclean's
insurer by simply and vaguely invoking the concept of negligence
in its complaint. Nationwide Mutual Ins. Co. v. Yaeger, No. Civ.
A. 93-3024, 1994 WL 447405, *2 (E.D. Pa. Aug. 19, 1994) ("A
plaintiff may not dress up a complaint so as to avoid the
insurance exclusion."). As we will discuss below, if a complaint
alleges that an insured's acts were negligent, but the facts show

15

that the insured's acts were actually intentional, Pennsylvania courts have refused to blind themselves to reality and require an insurer to indemnify or continue to defend its insured to the bitter end.

### B.   **Duty to Indemnify**

Having concluded that the allegations in the Beecher Complaint trigger Utica's duty to defend Maclean, we now turn to the question of whether Utica is bound to indemnify Maclean. In analyzing _that_ duty, we may look beyond the factual allegations in the complaint to determine whether Utica's policy actually covers the claims in the Beecher Case. Pacific Indemnity Co. v. Linn, 590 F.Supp. 643, 650 (E.D. Pa. 1984).

### 1.   **Indemnity and Facts on the Record**

If the allegations in a complaint trigger an insurer's duty to defend, the insurer must defend until "'it [can] confine the claim to a recovery that the policy [does] not cover.'" D'Auria, 507 A.2d at 859 (quoting Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 752 (2d. Cir. 1949) (L. Hand, J.)). See also, e.g., Biborosch, 603 A.2d at 1058 ("[T]he insurer must defend until the suit is narrowed only to claims that are definitely not within that coverage."). Although a complaint triggers an

insurer's duty to defend, that duty "is not necessarily frozen in stasis," and it can end when the insurer can prove that its policy does not obligate it to indemnify the insured. <u>State Farm Fire & Casualty Co. v. Cooper</u>, No. Civ. A. 00-5538, 2001 WL 1287574, *3 (E.D. Pa. Oct. 24, 2001), <u>quoted in</u> <u>State Farm Fire & Casualty Co. v. Bellina</u>, 264 F.Supp.2d 198, 204 (E.D. Pa. 2003). <u>See also</u> <u>Comm. Union Ins. Co. v. Pittsburgh Corning Corp.</u>, 789 F.2d 214, 218, 220 (3d Cir. 1986) ("There is no principle of Pennsylvania law that the duty to defend automatically 'attaches' at the outset of the litigation and cannot afterwards terminate.") (also holding that an insurance company's duty to defend its insured terminated with its duty to indemnify).

As we discussed above, Utica's policy does not require it to defend or indemnify Maclean for intentional acts. "An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." <u>Elitzky</u>, 517 A.2d at 989, <u>quoted in</u> <u>Aetna Life & Casualty Co. v. Barthelemy</u>, 33 F.3d 189, 191 (3d Cir. 1994). We must determine whether Maclean's conduct was accidental or intentional from his vantage point. <u>Pipher</u>, 140 F.3d at 226; <u>Melrose Hotel</u>, 432 F.Supp.2d at 507. The shooting of Orr is only excluded from coverage if Maclean acted intentionally

17

and the "damage [was] of the same general type which [he] intended to cause." Elitzky, 517 A.2d at 989. See also Travelers Indemnity Co. v. Ward, No. Civ. A. 01-78, 2002 WL 31111834, *4 (E.D. Pa. Sept. 20, 2002) (concluding that the insured's action was not excluded when he threw a neighbor into a pool and broke her arm when he jumped in on top of her because the insured intended to dunk the neighbor but "did not intend nor expect to injure her").

In one case, Judge Joyner of our Court held that an insurance company had no duty to defend a man who made a statement indicating that he intentionally assaulted the plaintiff. State Farm Fire & Casualty Co. v. Griffin, 903 F.Supp. 876, 878 (E.D. Pa. 1995). In Griffin, the plaintiff in the underlying state court case alleged that the defendant injured him through a "'negligent, reckless and/or intentional assault and battery.'" Id. at 877. However, the defendant made a statement to plaintiff that "he and his friends decided to 'go after'" the plaintiff and that he was not drunk at the time. Id. Defendant also said that he brought a tennis racket to use as a weapon and that he "threw the first punch and then repeatedly hit [one of the victims] in the face with his tennis racket." Id. at 878. Furthermore, the defendant in Griffin presented no evidence

18

that he acted unintentionally or that the injuries were accidental. Based on this evidence, Judge Joyner determined that Griffin's acts were intentional, regardless of what plaintiff claimed, and that the insurer was not liable under the terms of the insurance policy. Id. at 878.

In Martin, the Superior Court of Pennsylvania conducted a similar analysis in a case involving a deadly shooting spree by a jealous ex-boyfriend. 595 A.2d at 1173. Martin was "upset [that his girlfriend] had left him and returned to a boyfriend and lifestyle of which he strongly disapproved." Id. Before the killings, he told a friend that he wanted to kill everyone in his ex-girlfriend's house, but his friend convinced him not to carry out his plans. A week later, Martin took a 9mm weapon from his own gun collection, loaded it, drove to the ex-girlfriend's house, and shot three people, killing two of them. He then drove away and killed himself. Id. One of the victims filed a suit against Martin's estate alleging that Martin "'[a]ccidentally, negligently or inadvertently' fired the shots which caused [the victim's] injuries." Id. Martin's insurance company filed an action for a declaratory judgment that it had no duty to defend the estate because the policy excluded bodily injury "which is 'expected or intended by the insured.'" Id. at 1173, 1175. There

19

was no evidence that Martin's conduct was an accident or negligent, even if it was "senseless, irrational and incomprehensible." Id. at 1176. The court cautioned against conflating rationality with intentionality: "[o]bviously, no rational person would go on a shooting spree, but this in no way lessens the intentional character of the conduct, if such intent is evidenced." Id. Because the evidence showed that Martin's conduct was intentional and there was no evidence that his actions were accidental or negligent, the Superior Court held that the policy did not cover Martin's actions. Id.

### 2.   Indemnity and Criminal Acts

Courts applying Pennsylvania law have also concluded that an insurer has no duty to indemnify (and by extension, to defend) an insured when (1) the insured has pleaded guilty to a crime involving the same events at issue in the civil case, and (2) that crime includes a scienter of intent. In Cooper, for example, the insured pled guilty to aggravated assault and criminal conspiracy for attacking the victim, who brought a civil claim against the insured. 2001 WL 1287574 at *4. Under Pennsylvania law, one element of criminal conspiracy is that the defendant intended to promote or facilitate the commission of the

20

underlying crime. Id. at *5. By his guilty plea, the insured admitted that he acted with intent regarding the criminal conspiracy charge, and our colleague, Judge Reed, concluded that the policy therefore excluded the insured's actions. Id.

Judge James McGirr Kelly came to a similar conclusion in State Farm Fire & Casualty Co. v. Bellina. 264 F.Supp.2d 198 (E.D. Pa. 2003). In the underlying state court civil action in Bellina, the plaintiffs sought damages for the shooting death of their decedent. They alleged that Bellina was liable for negligence, carelessness, recklessness, and intentional actions. Id. at 199, 201. Bellina's insurance company sought a declaratory judgment from our Court stating that Bellina's actions in shooting the decedent were intentional and not covered under the policy, which excluded actions that were "expected or intended" by the insured. Id. at 201. Judge Kelly held that the plaintiffs pled facts to support their negligence claim and that State Farm therefore had a duty to defend Bellina. Id. at 204. However, Bellina was convicted of voluntary manslaughter for the shooting, and in Pennsylvania an intent to kill is an element of that crime. Id. at 206. Therefore, as in Cooper, Bellina's intent was established in the prior criminal case, and the insurance company had no duty to indemnify or continue defending him because the

conduct was outside of the insurance policy's coverage. Id. at 206. See also Yaeger, 1994 WL 447405, at * 2 (holding that a policy excluded insured's actions when the plaintiff pled a claim for negligence but the undisputed facts of record showed that the insured's acts were intentional because the insured was convicted of aggravated assault, a crime that requires a finding of intent).

But in this case Maclean pled to involuntary manslaughter, which requires a mental state of recklessness or gross negligence -- not intent. 18 Pa. C.S.A. § 2504(a). Reckless conduct "constitutes an accident or occurrence" and is covered by policies like the one Utica issued to Maclean. Kirkpatrick v. AIU Ins. Co., 204 F.Supp.2d 850, 854 (E.D. Pa. 2002). See also Barthelemy, 33 F.3d at 193. Other than cases alleging sexual abuse of a child, for which our Court of Appeals has predicted Pennsylvania law would create an exception, the defendant's "subjective intent generally is relevant, even when the insured has pleaded guilty to a crime." Id. at 192.

Indeed, Utica itself does not argue that Maclean's plea, standing alone, establishes Maclean's intent and thereby relieves the insurer from its duties under the policy. Reply at 3. We conclude, therefore, that even if we did consider Maclean's plea

22

of <u>nolo contendere</u> on the issue of intent,[11] it would not foreclose Utica's duty to defend or indemnify him. Because Maclean's plea does not have an impact on the issue before us, we need not decide whether Maclean's plea of <u>nolo contendere</u> is admissible as evidence in this case.

### 3.   <u>Utica Has No Duty to Indemnify Maclean</u>

Even assuming that Maclean's plea did not establish that he intended to shoot Brian Orr, other undisputed facts on the record show that he acted with intent. In the joint stipulation the parties filed in this case, Maclean agreed to this description of the events: "Defendant went to his bedroom to get a loaded handgun, returned, and then fired the handgun at the Decedent." Joint Stip. at ¶ 12. This straightforward statement can only fairly be read to show that Maclean acted intentionally, and there are no facts in the record to negate this reading of his actions.

---

[11] In Pennsylvania, "[a] plea of <u>nolo contendere</u> . . . is an implied confession of guilt only, and cannot be used against the defendant as an admission in any civil suit for the same act." <u>Teslovich v. Fireman's Fund Ins. Co.</u>, 168 A. 354, 355 (Pa. Super. 1933) (internal quotations omitted), <u>cited in</u> <u>Hurtt v. Stirone</u>, 206 A.2d 624, 627 (Pa. 1965).

Maclean also stated that he "fired the gun because he believed it was necessary for self-defense." Id. at ¶ 13. Under a self-defense theory, Maclean was "privileged to respond only to a reasonable belief on his part that he [was] in imminent danger of bodily harm." Smith v. Lauritzen, 356 F.2d 171, 176 (3d Cir. 1966). People who are defending themselves act intentionally -- not negligently or accidently -- in the interest of self-preservation. One acting in self-defense reasonably believes that one is threatened, and then responds to that belief -- this constitutes an intentional act. From the stipulated facts, and the facts Maclean averred in his answer to the Beecher Complaint, we can only conclude that Maclean acted intentionally and that he intended to cause harm of the kind that Orr suffered.

Maclean has, moreover, pointed to no facts to show that he negligently or accidentally responded to Orr's threats. In his answer to Utica's motion for summary judgment, Maclean did not articulate or point to any facts in the record to suggest that his actions were the result of negligence (e.g., that the gun fired accidentally or that he was too intoxicated to formulate an intent to shoot Orr[12]). As Maclean himself has presented them,

_____

[12] In his answer to the Beecher Complaint, Maclean
                                        (continued...)

24

the facts lead inexorably to the conclusion that he acted intentionally. Therefore, Utica has no further duty to defend or indemnify Maclean in the Beecher Case, and we will grant Utica's motion for summary judgment on those issues.

### C.   **Punitive and Exemplary Damages**

Pennsylvania law distinguishes between compensatory damages, which make a victim whole, and punitive damages, which punish the wrongdoer. Creed, 529 A.2d at 12. "[A]n insurer owes no duty to indemnify an insured on an award of punitive damages" because punitive damages are based on the insured's wrongful conduct, not the injury the victim suffers. Id. Furthermore, Maclean's policy unambiguously excluded coverage for punitive and exemplary damages. Therefore, Utica has no duty to indemnify Maclean for any punitive or exemplary damages and associated costs.

---

[12] (...continued)
denies that he knew whether or not Laura and Brian Orr had been drinking before they arrived at his house. Maclean avers nothing, furthermore, about his own drinking that night. Similarly, in his response to Utica's motion for summary judgment, Maclean does not claim that he was intoxicated or point to any facts to support that conclusion. To be sure, Maclean told the police that he, Laura, and Brian had been drinking earlier that evening. Ex. B at 2. But there is no evidence -- and Maclean does not argue -- that he was still intoxicated at the time of the shooting or that his judgment or ability to form intent was impaired.

## III. <u>Conclusion</u>

Utica has met its burden to show that there is no genuine issue of material fact, and Maclean has not pointed to any facts to demonstrate otherwise. Therefore, we will grant Utica's motion for summary judgment and issue a declaratory judgment that it has no further duty to defend Maclean in the Beecher Case or to pay any damages -- including punitive and exemplary damages -- for which Maclean may be liable.

BY THE COURT:


__\s\Stewart Dalzell

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UTICA FIRST INS. CO.          :     CIVIL ACTION
                              :
        v.                    :
                              :
EDWARD MACLEAN                :     NO. 08-1138

ORDER

AND NOW, this 19th day of February, 2009, upon consideration of the plaintiff's motion for summary judgment (docket entry # 14), defendant's response thereto (docket entry # 15), and plaintiff's reply (docket entry # 19), it is hereby ORDERED that:

1.   Utica First Insurance Company's motion for summary judgment is GRANTED;

2.   Plaintiff has no obligation to continue to defend or indemnify Edward Maclean for any damages or other legal obligations that he may incur as a result of the institution of the matter <u>Sanford D. Beecher v. Edward Maclean</u>, Civ. A. No. 89-2006, which was filed in the Court of Common Pleas of Pike County, Commonwealth of Pennsylvania on October 2, 2007; and

3.   If any party in the action named above obtains a judgment against Edward Maclean that requires the payment of damages, expenses, costs or fees, Utica First Insurance Company

has no obligation to pay any such amounts pursuant to Homeowner's

Policy No. HOP 125689202; and

     4.   The Clerk of Court shall CLOSE this case

statistically.


                            BY THE COURT:


                           __\s\Stewart Dalzell

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UTICA FIRST INS. CO.          :     CIVIL ACTION
                              :
          v.                  :
                              :
EDWARD MACLEAN                :     NO. 08-1138

<u>JUDGMENT</u>

AND NOW, this 19th day of February, 2009, in accordance with the accompanying Memorandum and Order, JUDGMENT IS ENTERED in favor of plaintiff Utica First Insurance Company and against defendant Edward Maclean.

BY THE COURT:

<u>__\s\Stewart Dalzell</u>